Allen, J.
 

 The case was heard in the Court of Appeals upon an agreed statement of facts, which conceded the facts also admitted by the demurrer.
 

 
 *250
 
 In substance these facts are as follows:
 

 On February 18, 1929, the rural board of education of Weathersfield township passed a resolution to hold an election on the question of centralizing the schools in the rural school district of such township, pursuant to the provisions of Section 4726
 
 et seq.,
 
 G-eneral Code.
 

 Section 4726, in its pertinent part, reads as follows :
 

 “A rural board of education may submit the question of centralization, and, upon the petition of not less than one-fourth of the qualified electors of such rural district, or upon the order of the county board of education, must submit such question to the vote of the qualified electors of such rural district at a general election or a special election called for that purpose. If more votes are cast in favor of centralization than against it, at such election, such rural board of education shall proceed at once to the centralization of the schools of the rural district * *
 

 Section 4679 provides:
 

 “The school districts of the state shall be styled, respectively, city school districts, exempted village school districts, village school districts, rural school districts and county school districts.”
 

 The “Weathersfield township • board of education,” so called in the pleadings, is a rural board of education, within the purview of Sections 4276 and 4679.
 

 Upon March 19,1929, public notice of the election for centralization decided upon by the rural school board was given as required by law. The election was held upon March 30,1929, and a majority of the
 
 *251
 
 votes were cast in favor of centralizing such rural school district.
 

 Prior to the election, but subsequent to the enactment of the resolution calling the election, namely, upon March 16, 1929, the petition to transfer the territory in question was filed with the Trumbull county board of education, shortly before the end of the regular meeting, and the county board, by resolution, decided to consider such petition at the next meeting. The succeeding regular meeting was held upon April 20, 1929, after this action was filed.
 

 The pertinent part of the statute, Section 4696, General Code, under the provisions of which the petition to transfer the territory was filed, reads as follows:
 

 “A
 
 county board of education may, upon a petition of a majority of the electors residing in the territory to be transferred, transfer a part or all of a school district of the county school district to an exempted village, city or county school district, the territory of which is contiguous thereto. Upon petition of seventy-five per cent of the electors in the territory proposed to be transferred the county board of education shall make such transfer.”
 

 Upon March 29, 1929, the petition in mandamus was filed and an alternative writ of mandamus was issued. This writ was served upon the defendant rural school board upon March 30, 1929, the day of the election. Upon hearing in the Court of Appeals, which took place upon October 17,1929, the Court of Appeals held in favor of the petitioners and issued a peremptory writ, holding in substance that upon March 29, 1929, the date of the filing of the petition in mandamus, the petitioners were entitled to the is
 
 *252
 
 suance of the writ. Did the court err in so holding?
 

 Neither
 
 State, ex rel. Darby,
 
 v.
 
 Hadaway,
 
 113 Ohio St., 658, 150 N. E., 36, nor
 
 Summit County Board of Education
 
 v.
 
 State, ex rel. Stipe,
 
 115 Ohio St., 333, 154 N. E., 742, is controlling in deciding the question. The
 
 Hadaway case
 
 relates to a proposed transfer of territory from a district already centralized. In the
 
 Stipe case,
 
 while the petitioner had filed his petition for transfer under Section 4696, General Code, prior to the centralization election, he had not invoked the jurisdiction of the courts in mandamus proceedings prior to such election. This court therefore held that the mandatory duty to transfer no longer existed after a majority of the electors in the district had voted in favor of centralization.
 

 In our opinion, the instant problem is solved by a consideration of the question as to where, under the facts of this particular record, authority lay at the time of the filing of the action in mandamus to proceed either with centralization or with transfer. If the rural board of education then had power to act in the premises, the county board of education could not be compelled by mandamus to make the transfer.
 

 Upon the conceded facts, the rural board of education was acting according to law when upon February 18, 1929, it passed the resolution to hold the election upon the question of centralizing the territory in the rural school district. It then had authority to proceed with the election, and, if more votes were cast in favor of centralization than against it at such election, it had authority to proceed with the centralization of the district.
 

 The county board of education also had authority, under Section 4696, General Code, upon petition be
 
 *253
 
 ing filed in accordance with the provisions of that section, to transfer part of the same territory covered by the centralization proceedings from the rural school district to the Niles city school district. Since the petition contained the names of more than seventy-five per cent, of the electors, residents of the territory, the duty was mandatory upon the Trumbull county board of education to carry out the transfer unless it had no power to make the transfer because of the fact that the rural board of education, exercising its statutory powers, had previously acted with reference to a centralization including the same territory. Mandamus will not lie to compel an official to exercise a power which he does not possess.
 
 State, ex rel. Cist,
 
 v.
 
 City of Cincinnati,
 
 102 Ohio St., 692, 135 N. E., 974. This record does not present the case of one governmental board acting within its statutory powers; it presents the case of two such boards acting under concurrent powers. When the petition was filed with the county board of education a concurrent authority had already exercised power over the same subject-matter. Does this fact relieve the county school board of the duty resting upon it under Section 4696, General Code?
 

 It has been previously held by this court, in the case of
 
 Merrill
 
 v.
 
 Lake,
 
 16 Ohio, 373, 47 Am. Dec., 377, that, where two courts of this state have equal and concurring jurisdiction in certain cases in chancery, the court first obtaining jurisdiction of the case by bill will retain it for final disposition. Does the rule laid down in
 
 Merrill
 
 v.
 
 Lake
 
 apply to two boards authorized to exercise administrative functions? The reason for the rule certainly exists in each instance. If a county board of education can
 
 *254
 
 act with reference to territory within a rural school district after the rural board of education has acquired authority under the statutes to institute centralization, proceedings covering the same territory, or
 
 vice versa,
 
 the same confusion and conflict arise as in the case of simultaneous and overlapping action by two courts of concurrent jurisdiction. While there is no decision of this court upon this particular point, courts of last resort in other states have held that in such instance the rule applies and is not limited to judicial action.
 

 In
 
 People, ex rel. Hathorne,
 
 v.
 
 Morrow,
 
 181 Ill., 315, 54 N. E., 839, the case presented was as follows: The town of North Chicago was organized under a statute providing for such organization, and respondents had elected a president and trustees. Before organization had been decided on, but after notice of the election for that purpose had been posted, the territory was annexed to the city of Waukegan under another statute, which made such proceeding legal, and an action in the nature of
 
 quo warranto
 
 was instituted to oust respondents of the franchise of their offices. The Supreme Court of Illinois held that, since power had been given over the same territory to two parties authorized to act, exclusive jurisdiction was vested in the party first acting under the power, and hence the organization of North Chicago was valid. The reasoning of this decision applies exactly in the instant case. Here the statutes give power over the same territory to two governmental bodies, one the board of education of a rural school district, which may institute proceedings to centralize its territory, the other a county board of education, which, upon peti
 
 *255
 
 tion of a certain number of voters, may transfer tbe same territory to another district. Here the petitioners instituted the proceedings for the transfer of the territory after the resolution had been duly enacted for the centralization election, and while the centralization proceeding was still pending and undetermined. Both proceedings had been authorized by the Legislature. The proceedings of the board of education of the rural school district gave that body exclusive authority over the subject-matter, and it could not be defeated by a subsequent act of the petitioners. When the rural board had once acquired authority, it was its duty to retain it and proceed to the final disposition of the matter.
 

 To the same effect are
 
 Taylor
 
 v.
 
 City of Ft. Wayne,
 
 47 Ind., 274, and
 
 Independent District of Sheldon
 
 v.
 
 Board of Supervisors of Sioux County,
 
 51 Iowa, 658, 2 N. W, 590, 591. In the latter case the Supreme Court says:
 

 “By the proceedings taken by the plaintiff it had obtained jurisdiction over the disputed territory before any steps were taken to organize Grant. The right to complete its organization as provided by law followed. It could not be ousted of its jurisdiction over the disputed territory by anything done subsequent to the commencement of the proceedings to organize the plaintiff, unless the attempted organization was abandoned, or was not completed within the time required by law. ’ ’
 

 We think the reasoning of these decisions is sound. It follows that, at the time of the -filing- of the application for the writ of mandamus, the county board of education could not be compelled by man
 
 *256
 
 damus to make the transfer in question, for it had not the authority to make the transfer.
 

 Moreover, the Court of Appeals, in our judgment, should have taken into consideration the events which occurred subsequent to the filing of the petition in mandamus, particularly the facts that the election for centralization carried upon March 30, 1929, that bonds were issued, and the centralized school building was thereafter constructed in such rural school district. The defendant in error maintains that these facts are immaterial, and cites the ease of
 
 State, ex rel. Ice & Fuel Co.,
 
 v.
 
 Kreuzweiser, Inspector of Buildings,
 
 120 Ohio St., 352, 166 N. E., 228, in support of this contention. We do not consider this decision in point. In that case the question involved was, whether, after a building permit had been issued in a city, the fact that a zoning ordinance was enacted which would have prevented the erection of the type of building proposed by the applicant holding the building permit, would defeat an application for a writ of mandamus to compel the issuance of the permit. This court allowed the writ. Obviously the enactment of the zoning ordinance could not properly have a retroactive effect so as to defeat a right already existing. No such question arises here, where the resolution providing for the centralization election was enacted prior to the filing of the petition for transfer.'
 

 Upon the facts presented by this record, the court’s discretion in the issuance of this extraordinary writ should have been influenced by the fact that the centralized school district had been estab
 
 *257
 
 listed prior to the hearing of the mandamus case upon its merits. It is the general rule that “The question whether a mandamus should issue to protect the interest of the public does not depend upon a state of facts existing when the petition was filed, if that state of facts has ceased to exist when the final judgment is rendered.”
 
 Northern Pacific Railroad Co.
 
 v.
 
 Washington Territory,
 
 142 U. S., 492, at page 508, 12 S. Ct., 283, 289, 35 L. Ed., 1092.
 

 In
 
 Sullivan
 
 v.
 
 Secretary of Commonwealth,
 
 233 Mass., 543, 124 N. E., 422, 423, the court said:
 

 “In considering what justice requires as to the disposition of any cause, the court must consider changes in fact or in law and other subsequent events decisively affecting the relief to be afforded, which have been called to its attention as having supervened since the proceeding was instituted.”
 

 To the same effect are
 
 People, ex rel. Tilden,
 
 v.
 
 Massieon, Mayor,
 
 204 Ill. App., 70, affirmed in 279 Ill., 312, 116 N. E., 639;
 
 Dexner
 
 v.
 
 Houghton, Bldg. Inspector,
 
 153 Minn., 284, 190 N.
 
 W.,
 
 179;
 
 State, ex rel, Shelton,
 
 v.
 
 Edwards, City Clerk,
 
 109 Conn., 249, 146 A., 382;
 
 City of Owatonna
 
 v.
 
 Chicago, R. I. & P. Ry. Co.,
 
 156 Minn., 475, 195 N. W., 452, 453. In the latter case it is stated in the opinion:
 

 “When a court is asked to exercise the extraordinary power of mandamus, it is not limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue.”
 

 It follows that the peremptory writ of mandamus
 
 *258
 
 was improperly issued, and the judgment of the Court of Appeals will be reversed.
 

 Judgment reversed.
 

 Marshall, C. J., Kinkade, Robinson, Jones, Matthias and Day, JJ., concur.