## BOARD OF EDUCATION OF HOPEWELL RURAL SCHOOL DIST v LITTICK et

Ohio Appeals, 5th Dist, Muskingum Co

Decided Feb 3, 1932

Tannerhill & Weber, Zanesville, and Knepper & Wilcox, Columbus, for plaintiff. J. C. Bassett, Zanesville, for defendants.

MAUCK, J (4th Dist), sitting for LEMERT, J.

MAUCK, J.

A motion has been filed to dismiss the appeal on the ground that the county board has made no appeal, and, as the injunction against it is conclusive as to the rights of its appointees, the directors of the East Hopewell district, the latter cannot retry the issues made in the trial court. This motion is overruled.

The record shows that following the passage by the General Assembly of a bill for the rehabilitation of the public schools at the legislative session in 1929 there was in June of that year created the Hopewell rural district, consisting of territory in Muskingum and Licking counties. The board of education for this district secured an allowance of $10,000 from the funds supplied by the rehabilitation bill, this allowance being predicated upon the Hopewell district providing a first grade high school for a large territory which the state authorities conceived to be in need of such a facility. Thereupon the board of education submitted to the electors of the district a proposal for the issue of $89,000 of bonds for the purpose of purchasing a site and building and equipping a new high school building. This proposal was approved by the electors, and the board of education purchased a site; $3,200 being at that time advanced by the state. Much dissatisfaction arose over the location of the site selected. Those who were dissatisfied attempted to enjoin the use of the site determined upon. A further effort was made to induce the board of education to change the location. Thereafter a petition was circulated and an order made to transfer a portion of the district to Perry County. The board of education of that county refused to accept the proffered territory. Thereafter, in September, 1930, upon the solicitation of the parties who had failed otherwise to defeat the site of the new high school, the county board of Muskingum County passed the resolution complained of. The Hopewell district at the time it received the contribution from the state and at the time the issue of bonds was authorized was a large district with a tax duplicate of something like $2,300,000. The territory attempted to be detached by the county in September, 1930, has a tax valuation of $1,700,000, leaving only about $600,000 of a tax valuation in the Hopewell district, a valuation insufficient to support the kind of high school contemplated by the state at the time it advanced the $3,200 and agreed to advance an additional sum up to $10,000.

The plaintiff urges that there be applied to this situation the doctrine laid down in **Trumbull County Board of Education v State ex Van Wye, 122 Oh St, 247, 171 NE 241.** We do not find any analogy between the case at bar and the authority referred to. In that case the court was dealing with the relative powers of two boards, each of which was authorized to act with reference to the same subject-matter, and the court held that that board which first acquired jurisdiction had exclusive authority to proceed in the premises. That is not our case. Here the county board of education alone has power to transfer territory. The local board has no such power. Here, however, the local board has exclusive jurisdiction to establish high schools and to determine their location, and the county board has no jurisdiction over either question.

In our view, therefore, this case presents no question of conflict of jurisdiction but the altogether different question of whether the county board can lawfully exercise the authority conferred upon it by §4736 GC to create a new school district under the circumstances developed in this case. Much that is alleged in this behalf is not sustained by any proof. There is nothing to show that the county board acted through any improper motives, except as it appears to us the board yielded to what it thought to be local sentiment, and abdicated its official functions in order to satisfy those who refused to be comforted over the location of the new school building in the Hopewell district. The members of the county board protest that their action in creating the new district was not for the purpose of defeating the project for a new first grade high school in the Hopewell district. They severally say in the vaguest terms that they considered the educational needs of the district generally, but no one gives any concrete reason for the complete reversal of that board's attitude after the site of the new Hopewell building had been determined upon. The county board was quite satisfied with the plans and prospects of the Hopewell district in June, 1929. They permitted the state to commit itself to the extent of $10,000 and to actually furnish $3,200 thereof. They allowed the taxpayers to authorize a bond issue of $89,000, which may yet be issued.

Now the law is clear enough that local boards, and not county boards, may determine the location of schoolhouses, and the

more we read this record, bearing in mind that we must attribute to the county board some reason for its action in creating the East Hopewell district, the more we are persuaded that the county board had no reason in mind excepting to satisfy a large number of electors whose real complaint was, not that the original Hopewell district was improvidently created, but that the location of the new school building was unwisely made. This is an insufficient reason for action by the county board, and to so act was an abuse of the power conferred upon it by §4736 GC.

The injunction sought must be granted. Any other conclusion that might be reached would promise the most unhappy results. The state has already invested $3,200 in securing the cite that constitutes the bone of contention. This expenditure by the state was made in reliance on the good faith of all those who joined in the establishment of the Hopewell district, including the county board of Muskingum County. Good morals and sound policy alike suggest that state aided districts ought not despoil the state on whose benefactions they rely. The loss to the state, however, is possibly the least of the serious financial difficulties that might follow the refusal of the injunction. The taxpayers of the Hopewell district authorized an issue of $89,000 of bonds, and it is, of course, beyond the power of the county board to avoid the sale of these bonds and the erection of a high school building at the point selected. These bonds when issued would constitute a debt created upon authority not merely of the district as it would remain after the creation of the East Hopewell district but of the district as it stood at the time the vote was taken. The county board under its power to equalize the indebtedness of the Hopewell district and the East Hopewell district could not equitably impose upon the Hopewell district all the indebtedness created by the electors of the larger district. That would be a gross injustice both to the bondholders and to the remnant left of the Hopewell district. The result would necessarily be that all of the territory detached from the Hopewell district and placed in the East Hopewell district would be liable for an equitable proportion of the bonded indebtedness of the Hopewell district, and thus in the end the territory in the East Hopewell district would be required in part to support a high school in the new district and to continue to assist in paying for the high school building in the Hopewell district.

The injunction decreed in this case is in accord with the opinion of Judge Farr, speaking for the Court of Appeals of the Seventh district, in the unreported case of the Board of Education of the Warren Consolidated School District v County Board of Education, recently decided in Jefferson County.

Decree of injunction as prayed for.

SHERICK and MONTGOMERY, JJ, concur.