Williams, J.
 

 The sole, question is: Did a mandatory duty rest upon the county hoard, the respondent below, to grant the petition to transfer territory from the rural school district to a contiguous school district?
 

 Section 4696, General Code, provides in substance that a county hoard of education
 
 may
 
 make such a transfer of territory upon- the petition of a majority of the resident electors and
 
 shall
 
 malee the transfer upon the petition of 75 per cent of the resident electors. “Shall” as previously construed imposed a mandatory duty without qualification.
 
 State, ex rel. Brenner,
 
 v.
 
 County Board of Edn. of Franklin County,
 
 97 Ohio St., 336, 120 N. E., 174;
 
 State, ex rel. Whartenby,
 
 v.
 
 County Bd. of Edn. of Perry County,
 
 122 Ohio St., 463, 172 N. E., 285. On the other hand that section has no application to a centralized school district. A county hoard of education, however, under
 
 *582
 
 Section 4727, General Code, may transfer territory from a centralized school district upon the petition of two-thirds of the resident electors bnt no mandatory duty is imposed even though three-fourths or more of the electors join in the petition.
 
 State, ex rel. Darby,
 
 v.
 
 Hadaway,
 
 113 Ohio St., 658, 150 N. E., 36.
 

 The respondent contends that on April 16, 1938, after withdrawals, there were less than 75 per cent of the resident electors on the petitions. It is true that witnesses expressed an opinion to that effect, but such opinion was incompetent and cannot, as a matter of law, prevail against undisputed factual proof. A careful and painstaking examination of all the evidence discloses no conflict as to the fact that the petition and supplemental petitions, with full consideration given to all withdrawals, contained more than 75 per cent of the resident electors at all times. But Section 4696, General Code, has been modified in its application by the subsequent enactment of the School Foundation Law (Sections 7600-1 to 7600-9, inclusive, General Code, effective June 12, 1935) which requires that the county board of education shall on or before June first annually adopt a plan of school district organization.
 
 State, ex rel. Adsmond,
 
 v.
 
 Board of Education of Williams County School District,
 
 135 Ohio St., 383, 21 N. E. (2d), 94. In accordance with that decision those sections must be construed together. Under such construction a petition to transfer territory may be filed with the county board during the school year and the board must consider it in formulating the plan of organization for the next school year. If at the time of the adoption of such plan there are names of 75 per cent of the resident electors on the petition after withdrawals, if any, a mandatory duty rests upon the county board to make the transfer and give recognition to it in the newly adopted organization of districts. After adoption the plan of organization can be modified and changed only “in the same
 
 *583
 
 manner as provided for the adoption of such plan.” Section 7600-8, General Code.
 

 In the instant case when the petition for transfer containing as it did more than 75 per cent of the resident electors was filed with the county board no mandatory duty then rested on that board to make the transfer provided a plan of organization had been previously adopted for the current .school year. In event such a plan was in force the granting of the petition on April 16, 1938, was in violation of Section 7600-8, General Code (which permits no modification of a plan in operation except in the manner of its original adoption, that is, upon hearing after publication of notice thereof four times at regular intervals of not less than a week each 60 days prior to the hearing), and the rescission of its previous unlawful action (in granting the petition) by the subsequent action taken at the adjourned session on April 20, 1938, was not beyond the discretionary power of the county board, since there were and could be no intervening rights.
 
 State, ex rel. Owen,
 
 v.
 
 Carroll County Board of Education,
 
 129 Ohio St., 262, 194 N. E., 867;
 
 Ozark School District No. 56
 
 v.
 
 Wickes Consolidated, School District,
 
 185 Ark., 676, 49 S. W. (2d), 373;
 
 State
 
 v.
 
 Womack,
 
 4 Wash., 19, 29 P., 939;
 
 Wood
 
 v.
 
 Cutter,
 
 138 Mass., 149; 2 McQuillin, Municipal Corporations (Rev. Ed.), 605, Section 642. So the validity of the action of the county board in rescinding its previous action likewise depended on whether a plan of organization had theretofore been adopted for the current year.
 

 What then does the record show as to the adoption of a plan in 1937 and 1938? In disallowing the transfer of territory on May 27, 1938, the board gave as one of its reasons for disallowance that the petition for transfer was “not in harmony with the school organization under the foundation program.” It also appears from a motion that was carried at the meeting on May 31, 1938, that a plan of organization had been
 
 *584
 
 previously adopted by the board for the year 1937 and that the same plan was adopted for the year 1938. Although, there is no evidence in the record as to the details of the plan that was adopted for the 1937 school year, a presumption exists that the county board of education did its statutory duty and duly fixed the boundary lines of the school districts within the county by adopting a plan for the school year at the time and in the manner required by law. After all it is fundamental that the relator must allege and prove all the essential facts necessary to show that a clear legal duty rests on the respondent. It is therefore proper to proceed on the assumption that the duty of the county board to adopt a plan on or before June 1, 1937, for the ensuing school year had been duly performed.
 

 It remains to consider the effect of the election on centralization.
 

 Between the granting of the petition for transfer on April 16,1938, and its rescission on April 20 thereafter, the rural district, in which the territory sought to be transferred was situated, had voted in favor of centralization. If the centralization was valid any duty of the county board to include the proposed transfer of territory in the next plan of organization would thereupon become discretionary. The petition for transfer was filed with the county board before the order for a vote on centralization was made by the rural board. It was held in
 
 Trumbull County Bd. of Edn.
 
 v.
 
 State, ex rel. Van Wye,
 
 122 Ohio St., 247, 171 N. E., 241, that, as between two governmental boards that are required to act with reference to the same subject-matter, exclusive authority with respect thereto is vested in the board that acts first. That pronouncement has no application here for reasons that are apparent. No duty rested on the county board to consider the petition for transfer until the time arrived for the adoption of the plan of organization for the ensuing year. As heretofore indicated' by implication
 
 *585
 
 at least, the filing of such petition did not invoke the action of the hoard to change a plan previously adopted for the current year. There is nothing in the School Foundation Act that would prevent a v.ote on centralization at any time, and the filing of such a petition long before the date specified for the adoption of the plan of organization for the ensuing year would not deprive the electors of the rural district of the right to take steps to centralize the schools of the district. The conclusion is inescapable that the centralization was valid, and thereafter the inclusion of the transfer in the plan of organization to be adopted on or before June 1, 1938, was discretionary with the county board. Consequently the respondent was justified in rejecting the petition to transfer as it did on May 27, 1938, and in not including the transfer in the plan for the ensuing year in the action taken on May 31, 1938.
 

 Since under the undisputed facts no mandatory duty rested upon the respondent, the Court of Appeals erred to the prejudice of the respondent in allowing a peremptory writ of mandamus and for such error the judgment of the Court of Appeals is reversed and final judgment entered for the respondent below.
 

 Judgment reversed.
 

 Weygandt, C. J., Turner, Matthias, Hart and Zimmerman, JJ., concur.
 

 Bettman, J., not participating.