THE STATE, EX REL. CARMEAN ET AL., APPELLEES, *v.*
THE BOARD OF EDUCATION OF HARDIN
COUNTY, APPELLANT.*

*Judgment affirmed, 170 Ohio St., 415.

(No. 454—Decided May 25, 1959.)

*Mr. Harry I. Kaylor* and *Mr. Burke E. Smith,* for appellee.
*Messrs. Knepper, White, Richards, Miller & Roberts,* for appellant.

*Per Curiam.* This is an appeal from a judgment of the Common Pleas Court in an action in mandamus.

It is undisputed that on November 14, 1958, the respondent county board of education, acting under the authority of Section 3311.26, Revised Code (127 Ohio Laws, 204, 209), adopted a resolution proposing the creation of a new local school district to include the entire area theretofore included in the Hardin Central Local School District and three other local school districts under the jurisdiction of respondent; that the proposal included an accurate map showing the territory affected; that a copy of the proposal was filed with the board of education of each school district affected and the State Board of Education; and that, within thirty days after the adoption of the proposal, each of the boards of education of the local school districts affected, except that of the Hardin Central Local School District, adopted resolutions approving the proposal. It is further undisputed that between November 14 and November 24, 1958, a petition was circulated in the Hardin Central Local School District petitioning respondent to "consolidate the Hardin Central Local School District, with Kenton Union School District, Kenton, Hardin County, Ohio" "in accordance with Section 3311.261, Revised Code"; that the petition was presented on December 10, 1958, to the Superintendent of Schools of Hardin County; and that at a regular meeting on December 18, 1958, respondent board considered the petition and rejected it. The resolution rejecting the petition is not in evidence, nor is there any evidence as to the reason for such rejection, nor as to whether the sufficiency of the signatures on the petition had been checked or determined before the rejection.

At the trial of this action relators introduced testimony bearing only on the sufficiency of the signatures to the petition, and the respondent rested without offering any evidence. Upon the issues joined the trial court found for the relators and granted a peremptory writ of mandamus ordering respondent to transfer the Hardin Central Local School District to the Kenton Union City School District, subject to the approval of the board of education of the latter district.

Respondent assigns error in four particulars:

"1. The trial court erred in determining that the petition presented to the defendant-appellant on December 10, 1958, was sufficient to comply with the requirements of Section 3311.261, Revised Code.

"2. The trial court erred in sustaining the demurrer of the plaintiffs-appellees to the third defense of the answer of the defendant-appellant.

"3. The trial court erred in admitting evidence offered by the plaintiffs-appellees and objected to by the defendant-appellant.

"4. The judgment is contrary to law."

In this appeal, our first and primary concern is a determination of whether the trial court erred as a matter of law in any of these assigned particulars. Except as the actions of respondent board of education, as shown by the record, may have bearing in determining these assignments of error we are not permitted to explore the validity, propriety, or wisdom of the various actions of the board of education.

As the action of the trial court in sustaining relators' demurrer to the third defense of respondent's answer preceded the judgment of the trial court on the merits of the case, we will consider the second assignment of error first. As a third defense the respondent affirmatively pleaded that the resolution adopted by it under the provisions of Section 2311.26, Revised Code, *supra*, on November 14, 1958, to consolidate the four local school districts, and the action thereafter taken by the boards of education affected, constituted an assumption of jurisdiction over the transfer of Hardin Central Local School District, which served to prevent any other transfer than that thereby proposed until jurisdiction over the same had been exhausted.

A reference to Section 3311.26, Revised Code, *supra*, reveals the following pertinent provisions, with emphasis added where appropriate:

"A county board of education may, by resolution * * *, propose the creation of a new local school district from one or more local school districts * * *. Such proposal shall include an accurate map showing the territory affected. After the adoption of the resolution, the county board shall file a copy of such proposal with the board of education of each school district * * * and with the state board of education. All boards of education receiving copies of such proposal *may*, within thirty days thereafter, register approval or disapproval of the same with the county boards. The county board *may*, within

sixty days after the expiration of the thirty day period, modify the proposal. If the county board modifies a proposal, it shall immediately file a copy of such modified proposal with the board of education of each school district * * * and with the state board of education.

"If the county board *has not* filed a modified proposal, it *may* certify the original proposal to the board of elections for the purpose of having the proposal placed on the ballot at the next general election which occurs not less than ninety days after the expiration of the sixty day period during which the county board might have modified the proposal.

"If the county board *has* filed a modified proposal, it *may* certify the modified proposal to the board of elections for the purpose of having the proposal placed on the ballot at the next general election which occurs not less than ninety days after the date on which such modified proposal was filed with the boards of education as above provided.
"* * *

"Upon certification of a proposal to the board of elections pursuant to this section, the board of elections shall make the necessary arrangements for the submission of such question to the electors of the county qualified to vote thereon * * *.

"* * * If the proposed district be approved by at least a majority of the electors voting on the proposal in each district whose boundary would be altered by the proposal, the county board shall then create such district effective as of the next succeeding July 1 following the election. * * *"

It will be observed that this statute does not require any affected board of education to do anything with respect to the proposal. The statute permits a board to "register" approval or disapproval with the county board, but such registration of, or failure to register, approval or disapproval has no legal effect on the proposed consolidation. The county board is permitted, but not required, to certify its proposal or modified proposal to the board of elections to be placed upon the ballot regardless of whether the affected boards have taken any action whatsoever and regardless of whether the action which they take constitutes their approval or disapproval of the proposal. Indeed, the statute does not require a county board to proceed

beyond the adoption of the resolution proposing the creation of a new school district, and the proposal may be abandoned by the county board of education the moment after it is first made. Insofar as appears from the record before us, the respondent county board of education may have abandoned its proposal. At the least, the record does not indicate that the county board of education had, at the time of the hearing of this action, certified any proposal or modified proposal to the board of elections for submission to the voters.

Under these circumstances this court is of the opinion that the principle of the case of *Trumbull County Board of Education* v. *State, ex rel. Van Wye*, 122 Ohio St., 247, 171 N. E., 241, does not, as urged by the appellant, apply, and that the respondent board had not taken such jurisdiction over the transfer of the territory of the Hardin Central Local School District under the permissive provisions of Section 3311.26, Revised Code, *supra*, as to prevent its transfer pursuant to the mandatory provisions of Section 3311.261.

The second assignment of error is therefore without merit.

Relators' first assignment of error involves the claim that the petition signed and filed by relators and the other petitioners to invoke the jurisdiction and action of respondent board under Section 3311.261, Revised Code, alleged that the signers ''represented more than 75 per cent of the number of votes cast in such district at the last general election November 5, 1957,'' whereas the last general election prior to the filing of the petition was November 4, 1958, and that by reason of such allegation the petition was legally insufficient to compel the action of the board.

The paragraph of Section 3311.261, Revised Code, herein pertinent, reads as follows:

''Notwithstanding Sections 3311.22, 3311.23 [*sic*] and 3311.26 of the Revised Code, until January 1, 1959, a county board of education may consolidate a school district having only an elementary school or schools with one or more adjoining local, exempted village, or city school district or districts having a high school, upon receipt of a petition requesting such consolidation signed by qualified electors of the district equal in number to at least fifty-five per cent of the qualified electors

voting at the last general election residing within such elementary school district. *If such petition is signed by qualified electors of the district equal in number to at least seventy-five per cent of the qualified electors voting at the last general election residing within such elementary school district the county board of education shall make such transfer.* Such transfer shall be subject to the approval of the board or boards of education to which the district is being transferred." (Emphasis added.)

It is the opinion of this court that by the plain intendment of the statute the words, "last general election," refer to the last general election prior to the receipt by the county board of a petition, which, in this case, would be the election held on November 4, 1958. The only requirements of the statute as to the form of the petition are the words "upon receipt of a petition requesting such consolidation," *i. e.*, the consolidation of a school district having, in fact, only an elementary school or schools with one or more adjoining local, exempted village, or city school district or districts having, in fact, a high school. Nor do any other statutes in the chapter dealing with school district transfers and consolidations, *in pari materia* with this section, impose any additional requirements as to the form of the petition. It is our opinion that, if a petition requests "such consolidation" and is signed by individuals who are, *in fact,* "qualified electors of the district equal in number to at least seventy-five per cent of the qualified electors voting at the last general election residing within such elementary school district," the petition would be legally sufficient without any allegations as to the qualifications of the signers. Following this view, the words and figures, "November 5, 1957," and also the words, "at the last general election," are mere surplusage, and their presence in the allegations of the petition does not make the petition either void or voidable.

The trial court did not therefore err in determining that the petition was sufficient to comply, as to form, with the requirements of Section 3311.261, Revised Code.

Respondent's second assignment of error is directed to the admission in evidence of the testimony of witnesses bearing on the qualifications of the signers of the petition, particular objection being made to the testimony of one Burke Smith.

Smith, who appeared as co-counsel for relators, took the stand and testified that he is a member of the Hardin County Board of Elections, that on the day before the trial several péople living in each of the voting precincts of the Hardin Central Local School District met at the office of the board of elections, that they took the poll books for their respective precincts from the November 4, 1958, election and determined, by their individual knowledge of the location of the residences of the respective voters and the location of the boundary lines of the school districts, the number of persons whose names appeared in such poll books as voters at that election residing within their respective precincts and within the Hardin Central Local School District, and that they determined the number of persons residing in the school district and in their respective precincts, whose names appeared as signers of the petition for consolidation of the school districts.

Smith then testified, over the objection of the respondent, as to the respective numbers thus determined from each precinct and as to the totals of voters and signers thereby obtained, the total petition signers being in excess of the total voters. Smith did not testify as to how these people happened to meet for the purpose of making the tally, but did testify that the board of elections would not certify as to the correctness of the tally.

Following Smith's testimony, a Herbert Barrett testified, without any objection from the respondent, that he was one of those who participated in making the foregoing tally and as to the results of his precinct tally. Respondent then joined in a stipulation to the effect that other witnesses from each "township" involved would testify in substance with respect to their "township" the same as Mr. Barrett had with reference to his.

Respondent's objection to Mr. Smith's testimony as to the results of the tally was based on the claims that the insufficiency of the form of the petition made the evidence incompetent, that as to Smith it was hearsay, and that it was irrelevant because a tally based on the poll books would only reflect the electors residing within the school district who voted at the last general election in the particular precinct and would not reflect the number of electors residing within the school dis-

trict who voted at the last general election at any place, even other than at the precincts involved. The first of these claims we have hereinbefore disposed of. Although as to Smith the results of the tabulation appear to be hearsay, and the admission of his testimony thereto would be technically erroneous, such error was not in itself prejudicial because the testimony had reference to tabulations which were the same as those thereafter admitted in evidence, without objection, by the testimony of Mr. Barrett and by the stipulation joined in by the respondent as to the testimony of other of the tabulators.

Notwithstanding that Smith's testimony as to the results of the tabulation was subject to objection as being hearsay, his testimony in this respect and that of Mr. Barrett and the other tabulators, whose testimony was stipulated to, was not objectionable for the mere reason that it tended to prove the number of qualified electors residing in the elementary school district who voted at the last general election in precincts within that district and did not conclusively prove the number of qualified electors residing in the elementary school district who voted anywhere at the last general election. In our opinion this is, for at least two reasons, a distinction without a difference. First, since the names of voters of all types of disabled or absentee ballots are entered in the poll books of the precinct of their residence on election day as voting therein, the poll books would normally reflect the names of all qualified voters residing in the precinct voting at the election. It would only be for some abnormal reason, not appearing of record in this case, that any voter residing in the precinct would not vote in the precinct of his residence. Secondly, it is our opinion that the Legislature intended the words in Section 3311.261, "of the district," to apply to and modify the words, "qualified electors," whether used in the sense of a qualified elector signing a petition or in the sense of a qualified elector voting at the last general election, the former being an elector residing in the district and entitled to vote at a precinct within the district and the latter being an elector residing in the district, entitled to vote, and whose vote was included with those cast, at a precinct within the district.

A more important consideration in determining whether

such testimony was competent is that of whether a determination of the respondent board reflecting the sufficiency or insufficiency of signatures on the petition was reviewable at all by the Court of Common Pleas. It will be remembered that nowhere in the record of this cause does there appear any reason assigned for the action of the county board of education in rejecting the petition. Under these circumstances the presumptions expressed in 1 Ohio Jurisprudence (2d), 607, Administrative Law and Procedure, Section 216, applicable to the action of boards of education, arise:

"In accordance with the general rule applicable to acts of public officers the action of an administrative agency within the limits of the jurisdiction conferred by law is presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment. In the absence of evidence to the contrary, the agency will be presumed to have properly performed its duties and not to have acted illegally, but regularly and in a lawful manner."

See, also, *Stilwell* v. *Board of Education of Hamilton County*, 99 Ohio App., 65, at page 72, 130 N. E. (2d), 857.

Giving effect to these presumptions, the lower court could properly conclude that, since the county board of education would have been acting illegally by rejecting the petition either for the reason that it had taken prior jurisdiction over the transfer of the territory involved, or for the reason that the petition was insufficient in form, as hereinbefore discussed, then the only way the board could have acted legally was for the reason that the signatures on the petition were insufficient.

From a review of Section 3311.261 and the sections appearing in Chapter 3311 of the Revised Code, *in pari materia* with Section 3311.261, it would appear that, if the determination of the sufficiency of the signatures on the petition is not a function of the county board of education, the same is a function of the county board of elections. If such be the case, we have no evidence here that the board of elections did or did not make such determination, but, adhering to the presumptions above quoted, we could properly presume that the county board of education did not act until the board of elections checked the sufficiency of the signatures, and that the board of elections properly performed its duties in this regard.

However, regardless of whether the duty of checking and determining the sufficiency of the signatures fell upon the county board of education or upon the board of elections, in either case their respective actions would be reviewable to determine whether they abused their discretion. See *State, ex rel. Gongwer,* v. *Graves, Secy. of State,* 90 Ohio St., 311, 318, 107 N. E., 1018; *Sullivan* v. *State, ex rel. O'Connor,* 125 Ohio St., 387, 392, 181 N. E., 805; and *Board of Education of Berea Rural School District, Hamilton County,* v. *Board of Education of Hamilton County,* 66 Ohio App., 267, 31 N. E. (2d), 702.

Since the statutes are quite specific as to qualifications and since there is very little discretion to be exercised in the determination of who is or who is not a qualified voter, such discretion as there is being primarily applicable to the determination of establishment or change of residence, any evidence which tended to prove the presence of qualified signatures on the petition constituting at least the 75 per cent prescribed by statute would also tend to overcome the foregoing presumptions and tend to prove that the board of elections, board of education, or both, abused their discretion in any determination that there was less than the required 75 per cent. The lower court must have so concluded and, there being substantial evidence to this effect, this court could not have determined the action of the lower court in determining the signatures sufficient erroneous even had it been assigned as error, which it was not, that the judgment of the lower court was against the weight of the evidence.

We conclude that the lower court did not commit any prejudicial error in admitting into evidence the testimony of which the respondent complains.

In its brief respondent claims that the judgment is contrary to law for the reasons discussed with reference to the first three assignments of error. Finding no prejudicial error with respect to the first three assignments of error, we do not find any prejudicial error as to the fourth assignment of error.

There being no prejudicial error, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

YOUNGER, P. J., GUERNSEY and MIDDLETON, JJ., concur.