**KERWIN et, Plaintiffs, v. BOARD OF EDUCATION OF ASHTABULA COUNTY SCHOOL DISTRICT, Defendant.**

Common Pleas Court, Ashtabula County.

No. 40998. Decided January 7, 1953.

Harold W. Murphy, Carl A. Weinman, Steubenville, for plaintiffs.

Roland Pontius, Tom R. Bailey, Ashtabula, for defendant.

530

## OPINION

By THOMAS, J.

This is an action to permanently enjoin the defendant Ashtabula County School Board from proceeding further in creating and establishing the Geneva Area Local School District, a consolidation of the territory now comprising the four local school districts of Geneva, Geneva-on-the-Lake, Geneva Village and Harpersfield; and further to enjoin the defendant board from attempting to create a new local school district from said territory for such period of time as to the court seems reasonable and proper under the circumstances.

Paul Kerwin, a resident and elector of the Geneva Local School District, is one of the plaintiffs and brings this action on his own behalf and on behalf of all other residents and electors of the four previously named local school districts "who are similarly affected and situated and, all the members of the Spencer Club, an unincorporated association of residents and electors of the Geneva Local School District, interested in the public schools of said district."

Plaintiffs E. J. Hannenan, Howard Walcott, O. W. Berry, O. D. Phelps and S. Weintz, J., are the duly elected, qualified, and acting members of the Board of Education of the Geneva Local School District.

Defendant Board of Education of Ashtabula County School District at the time here concerned was comprised of defendants George F. King, F. D. Loomas, Nelson L. Leonard, L. G. Dean and James J. Greene, and will be subsequently referred to as the defendant board. Defendant L. H. Finley who was dismissed from the case at the end of all the evidence is the duly appointed, qualified and acting clerk of the defendant board and is the duly appointed and acting superintendent of the Ashtabula County School District.

It is undisputed that on May 1, 1951, the defendant board officially moved to create the Geneva Area Local School District out of the territory composing the four previously named local school districts.

It is undisputed that within 30 days thereafter on June 1, 1951, remonstrance petitions protesting the action of the defendant board and containing 2,083 signatures were filed with the defendant board. Each petition read:

"TO: Ashtabula School Board of Education, Jefferson.

"WE, the undersigned, a majority of the qualified electors residing in the Geneva Village local school district, the Geneva local school district, the Geneva-on-the-Lake local school district, and the Harpersfield local school district, voting at the last general election to wit: the election held on November 7, 1950, remonstrate and protest against the creation of a new local school district consisting of the merger of the four above mentioned local school districts.

"By placing our signatures on this written remonstrance each of us agrees with the other signatories on this remonstrance that any action on our part either in withdrawing our names from the remonstrance or in signing any petition of contrary purpose or intent shall not become effective until the circulator of this remonstrance shall have been notified in writing of such withdrawal or expression of such contrary purpose or intent. This remonstrance is made in accordance with §4831-1 GC."

It is undisputed that at the general election held in November of 1950, 3,525 persons voted in the territory making up the four affected local school districts.

It is agreed that the right to file remonstrance petitions is granted and governed by §4831-1 GC which provides:

"A county board of education may create a new local school district from one or more local school districts or parts thereof, and in so doing shall make an equitable division of the funds and indebtedness between the newly created district and any districts from which any portion of such newly created district is taken. Such action of the county board of education shall not take effect if a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election shall within thirty days from the time such action is taken file with the county board of education a written remonstrance against it."

On July 13, 1951 the defendant board rejected the remonstrance petitions and proceeded to complete the organization of the new consolidated Geneva Area Local School District. Its action is reflected in the following minutes of that meeting:

"Regular meeting of the Ashtabula County Board of Education was held in the Board of Education Office on the above date with the following members present: George F. King, President, F. D. Loomas, Vice-Pres., Nelson L. Leonard. The County Superintendent reported that a number of questions had been submitted in writing concerning signatures on the remonstrance petitions in connection with the creation of the Geneva Area Local School District. In accordance with the

instructions given at the last meeting of the County Board of Education, these were presented to the Prosecuting Attorney for an opinion. The Prosecuting Attorney, Roland Pontius, gave an opinion in writing and this opinion was read.

"A summary of the situation was given as follows: A number of names on the remonstrance petition after the recheck, which was made in accordance with instructions given at the June meeting, was 1,787. The opinion of the Prosecuting Attorney recommended that five names be added to this total and 30 names be withdrawn from the total given above, making the net number of names 1,762. The total number required to represent a majority of electors voting at the last general election was reported to be 1,763.

"The board members held a general. discussion concerning the remonstrance petitions. It was moved by L. G. Dean and seconded by F. D. Loomas that the County Board of Education accept the recommendation of the Prosecuting Attorney in determining the status of the remonstrance petitions.

"Roll call. Motion carried. As this recommendation meant that the remonstrance petitions were insufficient to block the creation of the new district, the Board proceeded to complete the organization.

"It was moved by Nelson L. Leonard, seconded by F. D. Loomas, that the clerk of the County Board of Education notify the clerks of the various school districts included in the newly created Geneva Area Local School District to make a list of funds and indebtedness. A check for the funds on hand made payable to the clerk of the Geneva Area Local School District is to be forwarded to the clerk of the County Board of Education. This transfer of funds will be in order as soon as the newly created district has organized and the newly elected clerk has filed a bond as required by law. Motion carried."

The board thus accepted 1,762 of the 2,085 signatures, concluded that 1,763 (that is one more than half of the 3,525 who voted in the 1950 general election of the affected territory) were needed to block consolidation, and accordingly overruled the remonstrance petitions and proceeded with the creation of the new consolidated district.

In their petition plaintiffs allege that in accordance with §4831-1 GC, a written remonstrance containing 2,083 signatures was filed with defendant Board.

They allege further that "notwithstanding the duty enjoined by law and in defiance and contrary to said written remonstrance and the statute in such case made and provided, said defendant board unlawfully and illegally appointed a new local school board for said newly created school district and is

proceeding further with its creation and intends taking other action in connection with the creation and establishment of said new local school district notwithstanding the fact that said written remonstrance is sufficient to nullify and defeat said action and the creation of said new school district."

Plaintiffs further allege that "unless said defendants are enjoined and restrained by this court from so doing, the defendant school board will eliminate the foregoing four local school districts over and against the valid and lawful protest of said electors signing said remonstrance; and said defendants are now acting without any authority at law and by their conduct in the respects herein alleged, these plaintiffs and others similarly situated on whose behalf this action is brought, will be irreparably damaged and injured; and plaintiffs say they have no adequate remedy at law in the premises."

In its answer defendant board admits that unless enjoined by an order of this court it "will proceed in the manner provided by law to do all things necessary to establish, create and complete a new local school district comprising the territory of the local school district set forth in plaintiffs' petition."

Further answering defendant board contends that "any paper writing filed with the defendant board of education attempting to remonstrate against the action of said defendant board of education * * * is insufficient in law for the reason that the same, at the time of the expiration of 30 days from the date said defendant board of education took said action, did not contain the valid signatures of a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election."

Defendant board further says "that any such writing as was filed with such board of education was a nullity and was void for the reason that the signatures of a large number of the said persons signing said writing were obtained by misrepresentation and fraud practiced upon said persons so signing same, and that therefore, said paper writing was not legally sufficient to prevent the action of said defendant board of education in creating said Geneva Area Local School District from taking effect."

The first question to be considered is the motion of defendant board made at the conclusion of all the evidence for a dismissal of plaintiffs' petition and for judgment for the defendant.

This motion rests first on the contention that the right to contest the action of a county school board in disallowing a remonstrance petition is controlled by **State ex rel. Gongwer v. Graves, 90 Oh St 311,** which holds that "elections belong to

534

the political branch of the government and not to the judicial, and are not per se the subject of judicial cognizance, but are matters for political regulation" and that a determination of the sufficiency of initiative and referendum petitions is "final, unless such decision has been fraudulently or corruptly made or procured, or unless he has been guilty of an abuse of discretion."

It is urged that plaintiffs neither plead nor prove that the defendant board here acted fraudulently, corruptly, or that it abused its discretion, and that accordingly the motion of dismissal and judgment should be granted.

To file a remonstrance under §4831-1 GC, is in effect to hold a referendum relative to the action of the county school board in creating a new school district. If the remonstrance is sufficient it operates to nullify or repeal the action of the board. The authority of the Graves case, supra, is therefore apt and applicable.

It follows that those actions of the defendant board in this situation which are discretionary may only be enjoined upon a showing that board fraud, corruption or abuse of discretion intervened.

Nevertheless a concurrent concept is equally pertinent.

If public officers operate contrary to law, they act beyond and apart from any power of discretion; and against an illegal act of a public officer, persons with a sufficient legal interest may secure injunctive relief.

Ordinarily it is a taxpayer who "may maintain an action to enjoin public officers or a public commission from the commission of acts in excess of legal authority, which contemplate the expenditure of public money." **Green v. Commission, 90 Oh St 252.**

Here it is the claim of the plaintiffs in substance that the acts already committed and the further acts about to be taken by the defendant board are contrary to §4831-1 GC. If true, restraining relief against such illegal conduct may be obtained by persons having legal interest.

The existence of such a right of action in connection with §4831-1 GC and its antecedent sections was employed in **Board of Education v. Board of Education, 112 Oh St 108** and **Iddings v. Board of Education, 155 Oh St 287, 44 O. O. 294.**

Since the presently contested action of the defendant board, if not checked, will destroy the plaintiff local school board and will disestablish the Geneva Local School District in which the plaintiff has a substantial and direct interest, both as a resident and qualified elector of that district for himself and on behalf of others similarly situated, the plaintiffs possess

sufficient legal interest to institute and prosecute this action for injunctive relief.

Defendant board places its motion for dismissal and judgment also on the ground that the remonstrance petitions, plaintiffs' exhibits 29 through 161, were inadmissible.

These exhibits were identified and offered in the course of the testimony of L. M. Finley, the clerk of the county school board.

"Q. I hand you now papers that have been marked for identification as plaintiffs' exhibits 29 through 161 inclusive, and I ask you to state to the court what they are.

"A. These are petitions which by their assertion were filed in remonstrance and protest against the creation of the Geneva Area Local School District, does that answer the question?

"Q. With whom were they filed?

"A. They were filed with me as clerk of the Ashtabula county board of education.

"Q. On June 30th or on what date?

"A. On June 1, 1951, which is the same date I believe I testified before.

"Q. I offer into evidence plaintiff's exhibits 29 through 161 inclusive.

"Defendants counsel: No objection.

"Court: They will be received."

Though the remonstrance petitions were first received without objection, a later objection was made to their introduction and plaintiffs expressly agreed that the tardiness of the objection would not be raised.

Defendant's objection to the introduction of the remonstrance petitions relies on the claim that plaintiffs have failed to prove the genuineness of the signature on the petitions.

It is true that with some few exceptions there is no direct evidence which authenticated the 2,083 signatures appearing on the petitions.

The affidavits of the circulators appearing on the petitions and stating in substance that the signatories signed in the presence of the circulators, can add no probative force to the petitions inasmuch as these affidavits are not rendered admissible either by §11532 GC, or by §4831-1 GC, which makes no provision for verification of the written remonstrance.

In fact, §4831-1 GC, affords no specifications at all for the form or sufficiency of a written remonstrance.

Counsel for the defendant cogently note the contrast, in this respect, between §4831-1 GC and §4227-4 GC, which latter section in spelling out municipal initiative and referendum

procedure provides for the verification of petitions and specifies that such petitions "and signatures upon such petitions shall be prima facie presumed to be in all respects sufficient."

However, even in the absence of a statutory presumption of a petition's sufficiency it has been held in connection with the filing of a local option petition that "a petition for or against the sale of intoxicating liquor in a residence district is itself prima facie evidence that the signers thereof are resident-electors of the districts, qualified to sign the petition, and in the absence of evidence tending to show that a signer is not such an elector, it is not error to count his name in determining the sufficiency of the petition." In re Petition to Prohibit Sale of Intoxicating Liquors, etc. 20 Ohio O. C. C. (N. S.) 26.

However, neither §4227-4 GC, nor the local option law as construed by the Cuyahoga County Circuit Court in In re Petition to Prohibit Sale, supra, is sufficiently similar to §4831-1 GC, for the principle of either to here control.

The admissibility of the instant remonstrance petitions must be decided in accordance with the applicable statute. §4831-1 GC. Impliedly but inescapably under this section the duty devolves upon the county board of education to determine in the first instance whether or not the signatures on the "written remonstrance" are genuinely those of, or authorized by persons who, on the 30th day following the defendant board's action were "qualified electors residing in the territory included in such newly created district voting at the last general election," and who constitute a majority of such class of qualified electors. Such duty of the county board is similar to another described in State v. Board of Education, 18 Abs 217.

The task of the county board of education under §4831-1 GC, is thus both procedural and substantive.

First the county board of education must determine if the signatures are genuinely those of or authorized by the persons whose names they purport to be.

Secondly, the county board of education must decide whether the signatures found to be authentic constitute the specified majority.

Defendant board upon the receipt of plaintiff's exhibits 29 through 161 proceeded to check all signatures against the appropriate poll books and to determine the validity of the signatures.

It is apparent from the proceedings of the defendant board taken on July 13, 1951, that 1,762 signatures of the written remonstrance were accepted, leaving a total of 321 that were not. The minutes of the July 13, 1951 meeting do not expressly indicate the composition of the rejected signatures.

But from all the evidence it appears that the 321 rejects included the following categories:

92 signatures were rejected because they represented names of non-voters at the November 1950 general election.

187 signatures were rejected because such persons signed a counter-petition before the expiration of the 30th day, that is on June 1, 1951.

18 signatures were rejected because they represented names of persons who voted at the November 1950 general election from the affected territory but subsequently and prior to June 1, 1951, changed their residence and moved out of the territory.

13 signatures were rejected because they represented names of persons who had previously signed the remonstrance petitions.

Seven signatures were rejected because the defendant board believed that they represented names of persons who were induced to sign the written remonstrance because fraud or misrepresentation was practiced upon them.

Three signatures were rejected because the board concluded that they represented names of persons who did not reside in the affected territory on June 1, 1951, although they then and there owned a dwelling in which they lived a part of the time.

It was stipulated at the trial that the signature of W. E. King was not authorized.

Defendant board offered testimony which tended to show that James Miller had not authorized his mother to sign for him, though his mother testified that he had given her authority. Harry Buff and Edward J. Lye, though they did not personally sign, authorized their wives to sign for them, the preponderance of the evidence shows.

Hence it is established that the defendant board in its investigation and determination of the sufficiency of plaintiffs' exhibits 29 through 161 treated as authentic all but four of the entire number of 2,083 signatures on said exhibits. This affirmative acceptance of 1,762 signatures constitutes an express finding by the defendant board that such signatures were authentic, which action may here be substituted for direct evidence to that effect.

Furthermore, defendant board's rejection of no more than four of 2,083 signatures because of lack of authenticity permits the inference that the remaining signatures were authentic.

Such inference is here available in meeting the plaintiffs' burden of proving that the signatures on the written remonstrance are genuine.

To thus give probative effect to the actions of the defendant board in conducting its investigation and in determining the sufficiency of the instant written remonstrance seems entirely consistent with and in furtherance of the principle already found applicable that the present action of the defendant board is open to question only upon a showing that the board acted fraudulently, corruptly, with an abuse of discretion or contrary to law.

If the defendant board rejected any signature because it was not authentic it was bound to say so. Had the board so acted, the plaintiffs would then have had to shoulder the burden of showing that such action constituted an abuse of discretion.

Since the board was bound to accept or reject all signatures in order to determine the sufficiency of the written remonstrance, the board's failure to find that a signature lacked authenticity operates as a finding, by inference, that any such signature is authentic.

Finally, if the defendant board in the course of its proceedings accepts a signature as valid once the board jurisdiction has been superceded by court action, the board thereupon becomes estopped from disclaiming or disavowing its former action. A board finding that a signature is valid becomes binding on the board in any later court review.

Such a construction of the procedural requirements of §4831-1 GC, seems entirely in keeping with the manifest intent of this section to afford a real and not an illusionary right to remonstrate against the creation of a new school district.

Accordingly the defendant board's objections to the introduction of plaintiff's exhibits 29 through 161 are overruled and defendant board's motion for dismissal and judgment is likewise overruled.

The question which now arises is whether or not the defendant board acted in any respect contrary to law.

It is agreed that the defendant board in determining what constituted a majority necessary to block its action in creating the Geneva Area Local School District used 3,525 as the total of those voting in the November 1950 general election in the territory involved. Hence its decision that the necessary majority was 1,763.

Was this computation in accordance with §4831-1 GC?

This section as amended in September, 1947, provides that "such action of the county board shall not take effect if a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election shall within 30 days from the time such action

is taken file with the county board of education a written remonstrance."

A study of the statutory antecedents of §4831-1 GC, is helpful in determining the majority contemplated by §4831-1 GC.

In the law which established county school boards in 1914, full power to create school districts was vested by §4736 GC, in county school boards. It was accordingly held that a board's decision creating a new school district was discretionary and could be overturned only in the presence of fraud, or an abuse of discretion. Cline v. Martin, 5 Oh Ap 90, Wogoman v. Board of Education, 5 Oh Ap 306.

But in 1915 §4736 GC, was amended (105-106 v. 396 at 397) to grant a popular right through written remonstrance to nullify the creation of a new district.

In 1919 the same right expressed in different language was continued by a further amendment to §4736 GC (108 v. 704 at 707). This section which remained in effect until 1943 stated:

"Such action of the county board of education shall not take effect if a majority of the qualified electors residing in the territory affected by such order shall within 30 days from the time such action is taken file with the county board of education a written remonstrance against it."

It is noteworthy that this same wording is now substantially repeated in §4831-1 GC, except for the present addition of the clause "voting at the last general election," immediately before the words "shall within 30 days, etc."

In 1943 pursuant to a considerable revision in the school laws of the state, §4736 GC, was repealed but the right through written remonstrance to check the action of a county school board in creating a new school district was granted by entirely different language in §4831-3 GC, and as amended in 1945 (121 v. 620) continued until 1947. It reads:

"Any group of electors, qualified to vote in territory within the territorial boundary lines of the county school district, may, at any time prior to the second Monday in * * * March following the adoption of the plan of organization by the county board of education, file with the county board of education a protest relating to proposed change * * * in the boundary lines of any local school district within the county school system, wherein said electors reside.

"Such protest shall be in writing, signed by the electors making such protest specifically setting forth the nature of the protest together with the reasons therefor and shall be in duplicate.

"If such protest so filed be signed by 51% or more of the electors of the local school district or districts so affected,

then the county board of education and the superintendent of public instruction shall not have the authority to adopt the plan of reorganization proposed so far as the said local school district or districts are concerned."

Plainly by §4831-3 GC, those given the right to protest against the action of a county school board in changing the boundary lines of any local school district were the electors qualified to vote in the local school district or districts so affected. It was upon the basis of this total that the majority of 51% was computed.

In 1947 the provision giving the right to protest the action of a county school board in creating a new school district was shifted from §4831-3 GC, to §4831-1 GC.

Under §4736 GC, as it was in force from 1919 to 1943 required two conditions to be entitled to remonstrate.

First, a person had to be a qualified elector in the territory affected.

Secondly, he had to reside in such territory.

To these two conditions of eligibility to sign a written remonstrance §4831-1 GC, as amended in 1947, adds the third that one must have actually voted in the last general election. Iddings v. Board of Education, supra.

Moreover, the Supreme Court in construing antecedent §4736 GC, holds in Board of Education v. Board of Education that the right to join in or withdraw from a written remonstrance continues throughout the 30-day period in which the written remonstrance may be filed with a county board of education.

The principle is thus established that the significant time for determining the majority required under §4831-1 GC, becomes the 30th day of this allowable period.

It, therefore, follows that those who have a right to remonstrate under §4831-1 GC, are those who, on the 30th day of the allowable period (a) are qualified electors, (b) reside in the territory involved and (c) have actually voted at the last preceding general election.

It is readily apparent that the third group would invariably be the smallest. A county board of education in determining the total eligible to sign the remonstrance on which the majority should be computed should therefore first ascertain the persons who actually voted in the last general election. Next, it should subtract from that list all those persons who, either because of decease or departure, did not live in the territory involved on the 30th day; and finally, it should subtract from the list anyone who voted in the last general election but who, on the 30th day, was no longer a qualified elector of the territory involved.

Though it is true that such procedure will require considerably more work than to merely take the list of those actually voting in the last general election, to take the latter step alone ignores statutory provisions (a) and (b) above and gives effect only to provision (c).

In employing the full list of those who actually voted in the November 1950 general election (3,525 in all) as the total upon which the majority of 1,763 was computed, and in failing to subtract therefrom those voters who, on June 1, 1951, did not reside in the territory involved either by reason of decease or change of residence, the defendant board unmistakably violated the provision of §4831-1 GC, that those eligible to remonstrate had to reside in the territory involved.

Moreover, the defendant board compounded its erroneous interpretation of §4831-1 GC, by proceeding to hold ineligible some 18 signers of the written remonstrance who actually voted in the November 1950 general election but who did not reside in the territory on June 1, 1951, the last day of the 30-day period.

To include non-residents who actually voted in determining the total while denying voters who subsequently became non-residents, the right to sign the written remonstrance employs a double standard of statutory interpretation which is manifestly discriminatory.

Such a procedure is also arithmetically fallacious. If "A" has five apples and two oranges, and "B" has four apples, it would be clearly wrong to say that there is a total of 11 apples between "A" and "B" and that "A" has five—or one less than half. The two oranges should not be included in the apple total any more than they should be added to "A's" apple count. Obviously the correct answer is that "A" has five, or one more than half of the apple total of nine held by both "A" and "B."

The foregoing interpretation of §4831-1 GC, in determining the total on which a majority is based conforms to a 1949 opinion of the Attorney General of Ohio, 1949 volume, p. 842.

The Attorney General there concluded:

"that when an eligible signer dies, or moves from a district, he ceases to meet the qualifications required by §4831-1 GC, supra, and the total signers required by said section is reduced in like manner."

It, therefore, becomes necessary to determine whether on June 1, 1951, any of the 3,525 persons who actually voted in the affected territory had either died or moved from the territory.

The evidence reveals that on June 1, 1951, 24 voters at the

1950 general election in the territory affected had died and that 40 who voted in the 1950 general election in the territory affected no longer resided in said territory on June 1, 1951. (Plaintiffs' evidence showed 22, and defendant's evidence 18.)

Thus the total eligible to sign the written remonstrance on June 1, 1951, was not more than 3,523 less 64.

Based on the resulting total of 3,461, the majority necessary under §4831-1 GC, to join in an effective written remonstrance against the action of the defendant board was 1,731, whereas the defendant board actually accepted 1,762 valid signatures, 31 more than a bare majority.

Since the ground upon which the petition was rejected was illegal and contrary to law, the act of the board in so doing is enjoinable.

Though this conclusion meets the consideration of any further questions in the case, in the event of an appeal, the court's opinion on them might become essential and, therefore, will be given.

Plaintiffs contend that under the terms of the written remonstrance, supra, subscribers thereby became obligated to give written notice, of an intention to withdraw to the circulator of the remonstrance to validate any withdrawal therefrom. Accordingly it is claimed that only 62 of the 187 withdrawals are effective.

But in view of Board of Education v. Board of Education, supra, which holds that eligible persons can add their names to or withdraw their names from a written remonstrance throughout the 30-day allowable period, any attempted contractual limitation of that right is against public policy and ineffectual.

By the same token it was permissible for the plaintiffs to obtain from several who signed the withdrawal petitions further written authority cancelling their previous withdrawals. In other words, not only is a counter-petition permissible but also a counter-counter-petition.

Next to be considered is whether or not the defendant board committed an abuse of discretion or acted contrary to law in rejecting certain individual signatures. From the fact that the defendant board presented these individuals as witnesses in its case, it is assumed, though nowhere expressly does it appear, that the signatures of these individuals were part of the 321 signatures excluded by the defendant board.

It should be emphasized that it is not believed to be the function of this court to substitute its judgment for that of the defendant board in each of these cases. Rather, only

if it is found that the evidence shows that the defendant board abused its discretion or based its rejection on an erroneous rule of law should the action of the defendant board be disturbed and a different conclusion reached.

First to be taken up is the group of signatures where it is claimed that fraud or misrepresentation intervened.

With refference to the signatures of Isaac Butcher, Mrs. Edith Butcher, Una Zurhide, William Susa, Edna Susa, Christine Zito and Tracy Love, the testimony of these persons in substance was that each believed that he was signing a petition for consolidation rather than against. Each further testified that had he known it was a petition against consolidation, he would not have signed it. Certain misrepresentations are said to have induced their signatures.

Each of these persons could read and enjoyed his full faculties, "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. **DeCamp v̇. Hamma, E. Y. R., 29 Oh St 467.** If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs. **MacAdams v. MacAdams, 80 Oh St 232, 240, 241, 88 N. E. 542.**"

This statement announced in **Dice v. Railroad Co., 15 Oh St 185,** undoubtedly is still the general law of Ohio, even though the decision was reversed by the United States Supreme Court because it was found to contravene a federal statute, 96 L. Ed. 285.

Since it is concluded that the aforementioned individuals by failing to read the petition were alone responsible for their signing, it is concluded that the rejection of their signatures was based on an erroneous principle of law. Their names should have been counted.

With reference to the signatures of George Hagler, Rena Bell Hagler, Erwin Hagler and Mary Love, these persons testified in substance that they knew that they were signing a petition against consolidation. Several said they signed because they were told their children would have to go to the Spencer School, the children then attending Geneva Village School. At least one other said that she was told that the local school would be boarded up but that the people would continue to pay taxes on it. Though these representations related to future conditions, they nevertheless constituted present facts which reasonably may have induced these per-

sons to sign. The defendant board did not abuse its discretion in not counting these signatures.

There is also a group of signatures involving persons who owned property both in the territory involved and outside the territory. Several of these owned homes in Florida where they filed affidavits of residence in order to obtain tax exemptions. Several others resided in other parts of Ashtabula County but spent their summers at Geneva-on-the-Lake.

This group included William Heasley, Mrs. William Heasley, Laurel L'Homme Dieu, Pauline L'Homme Dieu, William Regner, Mrs. William Regner and Mae Welton.

The defendant board had to decide the intent of each of these persons with reference to what home was regarded as the person's residence. Such question was factual. On the facts presented it does not appear that the defendant board violated its discretion in excluding any of these signatures except those of Laurel L'Homme Dieu and Pauline L'Homme Dieu. Mr. L'Homme Dieu categorically testified that on May 29, 1951 he deemed Geneva-on-the-Lake as his residence, and the other facts do not contradict that intent.

There is also a group of persons each of whom did not personally sign the written remonstrance but whose authority to have another sign for him was the question which the defendant board had to decide.

By stipulation the signature of W. E. King admittedly was not authorized.

But on all the evidence it seems clear that the signatures of Harry Buff, Edward J. Lye, and James V. Miller were authorized.

Ruling on the inclusion of defendant's exhibit "I" was reserved. It is received. Rulings on questions and answers of George Hagler, Rena Bell Hagler and Donald Welton were reserved. These objections are overruled.

Coming then to the question of what relief is appropriate, the action of the defendant board taken on July 13, 1951, is contrary to law and will be permanently enjoined.

It is further concluded that the county school board under §4831-1 GC, should not be enjoined from proceeding with the creation of a new school district beyond the next general election following its action. Inasmuch as the 1952 general election has ensued, the plaintiffs are not entitled to any prospective injunctive relief.

An appropriate order is being entered.