Smith et al., Appellants, v. Board of Education et al., Appellees.

(No. 7853—Decided March 29, 1954.)

Messrs. *Waite, Schindel & Bayless,* Mr. *Philip J. Schneider,* Mr. *David P. Tarbell* and Mr. *Walter L. Tarr,* for appellants.

Messrs. *Paxton & Seasongood,* Mr. *Wm. H. Tracy* and Mr. *Reuven J. Katz,* for appellees.

Matthews, P. J.   The plaintiffs are residents and taxpayers of either Crosby Local School District, Harrison Local School District, or Whitewater Local School District of Hamilton County, Ohio, and by this action seek to enjoin the defendants, County Board of Education of Hamilton County, Ohio, and its members, from proceeding to abolish Crosby, Harrison, and Whitewater Local School Districts, and in their stead and place create a new school district embracing all the territory of said three districts.   Later, Charles B. Crouch, superintendent of schools and clerk of defendant board, was made a party defendant.   The

injunction is sought on the ground that the defendants are proceeding in an arbitrary and unreasonable manner and contrary to the law and the Constitution.

Issue was joined, and a trial had in the Common Pleas Court. At its conclusion, the court found on the issues in favor of the defendants, the temporary injunction was dissolved, and the action dismissed, at the costs of the plaintiffs. That is the judgment appealed from. The appeal is on questions of law and fact.

The trial in this court disclosed very little dispute as to the essential facts. It appears that the first act in the procedure prescribed by the law in the process of abolishing the three school districts and creating a new district out of their territory was taken by the board on June 9, 1953, by the passage of the following resolution:

"Resolution

"Whereas, it is deemed to be to the best interest of the Crosby, Harrison, and Whitewater Local School Districts, that said districts be abolished and a new district created, as is authorized in Section 4831-1 of the General Code of Ohio; and that the territory within the above district be transferred to the newly created district; and

"Whereas, this board of education is given the power to so abolish, create and transfer by reason of the provisions of Section 4831-1 of the General Code of Ohio;

"Therefore, be it resolved by this board of education, that the Crosby, Harrison, and Whitewater Local School Districts be and the same are hereby abolished and dissolved and a new district is hereby created; and

"Be it further resolved, that that territory lying within the Crosby, Harrison and Whitewater Local

School Districts, and which constitute said districts, be and the same are hereby transferred to a new school district; and that proper apportionment of funds or indebtedness of said districts be made by this board, if the same is necessary, and

"Be it further resolved, that a map of the newly created district, together with a notice of the abolition of the Crosby, Harrison and Whitewater Local School Districts, and the creation of a new school district be filed with the Auditor of Hamilton County, Ohio; and

"Be it further resolved, that notice of such proposed abolition of the Crosby, Harrison and Whitewater Local School Districts, and the creation of a new school district, be given to the boards of education so affected by this action; and

"Be it further resolved that the boards of education governing the administering the affairs of those districts abolished be and the same are hereby also abolished; and

"Be it further resolved by this board that the appointment of the members of the board of education of the newly created district be deferred for further action of this board.

"It is hereby further resolved that this transfer shall not take effect if a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election shall, within thirty days from the time such action is taken, file with the County Board of Education, a written remonstrance against it.

"Be it further resolved that this board recommends that the pupils attending Taylor High School from the aforementioned districts be permitted to continue to attend said high school as tuition pupils."

About a month before taking the action of June 9, 1953, the defendant board had sought the opinion of

school boards of the three local districts as to whether their consolidation into one district would be desirable. Crosby answered, but took no position for or against the proposal. Whitewater reported that a motion opposing consolidation failed to receive a second and that it had taken no action. Harrison reported that its five members favored consolidation.

It is urged that, in view of these reports from the three local districts, the defendant county board was too precipitate in its action of June 9, 1953, in passing the aforesaid resolution. We see nothing in the action of the county board under these circumstances indicating arbitrary or unreasonable action. It would seem to us that the inquiry it made would tend to prove just the contrary. Certainly, it shows no abuse of discretion.

At the time the defendant county board passed the aforesaid resolution, there was pending before it a petition signed by 87 per cent of the electors of the district, filed on April 14, 1953, requesting the transfer of certain territory from Whitewater district to the adjoining Cleves-North Bend district. It is urged that the pendency of this petition precluded the defendant board from taking its action of June 9, 1953. We have been cited to no rule, principle or case to support this contention—and we know of none. The order in which pending business should be disposed of was certainly within the sound discretion of the board, in the absence of some statutory provision either expressly or impliedly restricting such discretion. It might be suggested (in fact it has been suggested) that the procedure authorized or required by Section 4831-13, General Code (Section 3311.23, Revised Code), might have that effect upon the filing of a petition by the electors of the district, but that section relates to petitions filed in even numbered years, and

this petition of electors was not filed in an even numbered year, as specifically required. Furthermore, Section 4831-13, General Code, applies only to the transfer of territory in one county to a school district in another county, or to an adjoining city or exempted village school district within the same county. It has no application to transfers intra-county, except to an adjoining city or exempted village district. *Board of Education* v. *Minnich*, 14 Ohio Law Abs., 651; 36 Ohio Jurisprudence, 125, 126, Section 88. So we conclude that the pendency of the petition of the electors was without legal significance. At most it only indicates the desire or opinion of the signers. It cannot be treated as a prescribed act in any proceeding authorized by law. There is no statute authorizing the initiation of an intra-county transfer by petition of electors, except to an adjoining city or exempted village district, and there is no evidence that Cleves-North Bend was either a city or exempted village district.

The presence of the petition upon its files required no action by the board.

The recent case of *State, ex rel. Boerger,* v. *Board of Education,* 160 Ohio St., 527, 117 N. E. (2d), 330, involved a transfer of territory in one county to a school district in another county, and required the application of Section 4831-13, General Code. Manifestly, it is no guide to a decision of the case at bar. All the court decided was that the statute had been complied with, and that, therefore, a mandatory duty had been imposed upon the board of education to proceed with the transfer.

Next, it is claimed that the resolution of June 9, 1953, is insufficient in substance, in that it fails to include the appointment of a board of education for the newly created district and a division of the funds and indebtedness. The enabling act, under which the county board is proceeding is Section 4831-1, General Code

(Section 3311.26, Revised Code). This contention requires a critical analysis of its terms. We, therefore, quote it in full:

"A county board of education may create a new local school district from one or more local school districts or parts thereof, and in so doing shall make an equitable division of the funds and indebtedness between the newly created district and any districts from which any portion of such newly created district is taken. Such action of the county board of education shall not take effect if a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election shall within thirty days from the time such action is taken file with the county board of education a written remonstrance against it. When a new local school district is created within a county school district, a board of education for such newly created district shall be appointed by the county board of education. The members of such appointed board of education shall hold their office until their successors are elected and qualified. A board of education shall be elected for such newly created district at the next general election held in an odd numbered year occurring more than thirty days after the appointment of the board of education of such newly created district. At such election two members shall be elected for a term of two years and three members shall be elected for a term of four years, and, thereafter, their successors shall be elected in the same manner and for the same terms as is provided by law for the election of members of the board of education of a local school district."

It must be observed that this section sets forth the various changes necessary to effectuate the creation of a new school district and authorizes the county board to make those changes, but prescribes no pro-

cedure—no form, and no time schedule. That the new school district could not be brought into complete existence by a single exertion is manifest. The provision giving the electors thirty days in which to file a remonstrance shows that the General Assembly was conscious of that fact. The first act in the process is the decision to create the new district, and that decision can be made effective legally only by a resolution duly passed by the county board. After that, whatever action is taken depends upon circumstances and the exercise of a sound discretion by the board. Even the first step may be retraced. In *State, ex rel. Owen,* v. *Carroll County Board of Education,* 129 Ohio St., 262, at 267, 194 N. E., 867, it is said:

"However, it must be observed that the creation of a new school district is an administrative matter addressed to the sound discretion of the board of education. The statute employs the word, 'may,' and contains no language indicating an intention by the Legislature to so demarcate the powers of a board of education as to prevent a bona fide reconsideration and rescission of such action within a reasonable time and before further procedure in perfecting the new plan of operation. In the instant case, neither the pleadings nor the agreed statement of facts discloses that anything whatsoever had been accomplished, except the adoption of the original resolution of October 8, 1934. There had been no 'equitable division of the funds or indebtedness' as the statute provides; however, it is of course true that none was necessary since the creation of the new district involved no division of an existing district but merely the merger of two entire ones. Nevertheless, with reference to the many remaining administrative matters necessarily incident to such a project, nothing had been done. Necessarily considering this question as one merely of power and

not of policy, this court is of the opinion that under the circumstances of this case a board of education is not precluded from a reconsideration and rescission of its original action, as was done on January 8, 1935.''

That quotation seems to us to be a complete answer to the argument that the absence of an apportionment of the debts or mention of the subject in the resolution renders it defective. It also recognizes the fact that following the passage of the resolution to create a new school district, many administrative acts must be performed before the new district can come into full operative existence. The appointment of a board of education for the new district is one of those administrative acts. There is no intimation anywhere that the selection of a board of education is made a condition precedent to the creation of the district over which it is to exercise jurisdiction.

In *State, ex rel. Maxwell, Pros. Atty.,* v. *Schneider,* 103 Ohio St., 492, 134 N. E., 443, the funds were not apportioned in the resolution creating the new district. That was pleaded as a defense in an action in quo warranto between rival boards. As to this defense, the court, at page 499, said:

''The failure to apportion the funds and indebtedness between the newly-created district and Cass township rural school district, from which a part of the territory was taken, is also urged as a defense. However, the entries of the proceedings disclose that such order of apportionment of funds and indebtedness was in fact made, though at a subsequent meeting of the county board. A mere delay in taking such action cannot invalidate the proceeding creating the new district.''

Furthermore, as the new district is coextensive with the three districts it replaces and is an indivisible political unit, both the Ohio and the United States Con-

stitutions imposed liability upon it for the entire outstanding indebtedness. To construe Section 4831-1, General Code, to require an express statement to that effect, would attribute to the Legislature an intent to impose upon the county board the making of a useless declaration of a constitutional duty. The statutory duty to make an equitable division of the funds and indebtedness must be limited to cases where such a division is possible. Where the reason for the rule ceases, the rule itself must cease.

So we conclude that the resolution of June 9, 1953, was, and is sufficient in substance and fixed the commencement of the thirty days within which a remonstrance could be filed.

It is urged also that the publication of notice of the passage of this resolution failed to comply with Section 4831-16, General Code (Section 3311.27, Revised Code). That section provides:

"The county board of education shall cause any resolution adopted by such board evidencing any action authorized by Sections 4831-1 and 4831-13 [Sections 3311.26 and 3311.23, Revised Code] to be published in one newspaper of general circulation in the territory affected, once each week for two consecutive weeks, and such publication shall be completed not later than the third Saturday following the adoption by the county board of education of such resolution."

It is said that a summary of the resolution and not the resolution itself was published. An examination of the published notice discloses that it informed the public that the county board had adopted a resolution under the authority of Section 4831-1, General Code, abolishing the Crosby, Harrison and Whitewater Local School Districts, and creating a new district. It is not claimed that the publication of the facsimile of the resolution would have more fully advised the public

of the intent to abolish the three districts and create a new district, but the claim is that the statute requires the publication of the resolution and that nothing less will serve. That, it seems to us, would be sacrificing substance upon the altar of form. It is not claimed that anyone was misled by this publication, and it is our opinion that under those circumstances it must be held to be a substantial compliance with the statute. We so hold.

It is also urged that the publication of the notice of the passing of the resolution did not conform to the statute as to the time of publication. The notice was published in the issues of a newspaper of general circulation in the affected territory of June 18, June 25, and July 2, 1953. The statutory requirement of notice is found in Section 4831-16, General Code (Section 3311.27, Revised Code), by which it is provided that the passage of the resolution should be published "once each week for two consecutive weeks, and such publication shall be completed not later than the third Saturday following the adoption by the county board of such resolution."

The resolution was adopted on June 9, 1953. By reference to the calendar of 1953, we find that the third Saturday after June 9th fell on the 27th day of June, 1953. It seems to us sufficient to point out that the statute only requires publication of the required notice once each week for two weeks between the date of the adoption of the resolution and the third Saturday following the adoption of the resolution to demonstrate the sufficiency of this publication.

It should be stated that the evidence shows that unusual publicity was given at once to the adoption of this resolution. A petition of remonstrance was circulated, but was not filed because of failure to secure the signatures of a majority of the electors thereto.

Finally, it is contended that this consolidation, cannot be effected and the schools operated within constitutional tax limitations without drastically reducing the educational standard of the schools of the districts, and that, therefore, the county board abused its discretion in resolving to consolidate these local districts. Evidence was introduced showing the financial condition of each of these local districts and the effect of the consolidation upon the tax rate of each against the current duplicate that would be necessary to discharge the total obligations and operate the schools at their present level of efficiency. It is said that this evidence proves that the maximum levy would be 6.79 mills without a vote of the electors and that it cannot be assumed that the electors would favor an increased tax burden and that this would result in a deficit in the operating fund, or in the fund required to meet outstanding obligations, which latter contingency could not be indulged without impairing the obligation of contracts contrary to the provisions of both the Ohio and United States Constitutions. This argument is based on the premise that the maximum permissible tax levy in the consolidated school district without a vote of the electors must be determined by the permissible tax levy without a vote of the electors in that local district that had most nearly exhausted its taxing power without such vote. It is said that otherwise a rate in excess of ten mills would be imposed upon the latter district. If this reasoning is adopted the effect would be to reduce the taxing power against the duplicates in the other local districts to that same level.

We do not think the premise is supported by a proper interpretation and application of relevant constitutional provisions.

We are required to apply not only Section 2 of Article XII, but also Sections 2 and 3 of Article VI of

the Constitution of Ohio. By Section 2 of Article VI, the General Assembly is enjoined to "make such provisions by taxation or otherwise as * * * will secure a thorough and efficient system of common schools throughout the state," and, by Section 3 it was declared to be the policy of the state that "provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts."

It will be noted that the Constitution framers took note of the fact that the state was divided into districts for the administration of the schools. They had already provided by Section 7 of Article I that "it shall be the duty of the General Assembly to pass suitable laws * * * to encourage schools and the means of instruction."

In 11 American Jurisprudence, 661, Section 53, it is said: "In construing a constitutional provision, it is the duty of the court to have recourse to the whole instrument, if necessary, to ascertain the true intent and meaning of any particular provision, and if there is any apparent repugnancy between different provisions, the court should harmonize them if possible. The rules of construction of constitutional law require that two sections be so construed, if possible, as not to create a repugnancy but that both be allowed to stand and that effect be given to each."

It was in the light of this and other maxims of constitutional construction that the Supreme Court decided the case of *Gigandet* v. *Brewer, Treas.*, 134 Ohio

St., 86, 15 N. E. (2d), 964, which, in our opinion, is dispositive of appellant's contention. We quote the syllabus of that case:

. "When a school district is created by a county board of education by the consolidation of two districts under the provisions of Section 4736, General Code, and after an equitable division of funds is made, a levy of a tax outside the one per cent limitation prescribed by Article XII, Section 2 of the Ohio Constitution as amended on November 7, 1933, on all the property in the new district, for the retirement of bonds issued for the erection of a school building by a vote of the people in only one of the districts in 1926, is not violative of the aforesaid constitutional provision."

Counsel in that case urged that by the schedule attached to Section 2 of Article XII at the time of its adoption certain bond issues were excepted and that the bond issue therein involved came within one of the exceptions. This bond issue had been authorized by one of the school districts, and the plaintiff was an elector and taxpayer in the other district with which it had been merged. The Supreme Court took notice of this contention and found that, so far as the district that had voted to issue the bonds, it clearly came within the exception contained in the schedule and that it remained within the exception after the consolidation, but the court went further and placed its conclusion that the plaintiff, although he had not had an opportunity to vote, was taxable at the same rate as those who had had an opportunity to vote on the bond issue. At page 95, the court said:

"Broad powers were granted to the Legislature with reference to passage of laws for the arrangement of districts, changing of boundary lines and the transfer of territory from one district to another under Article VI, Section 3 of the Constitution. The Legislature

had the right to delegate the exercise of these powers to the county board of education. The only limitation upon the exercise of the power granted under Section 4736, General Code, is that the board cannot act unreasonably or in bad faith in effecting the creation of a new district. *Board of Education* v. *Boehm, supra; State, ex rel. Maxwell,* v. *Schneider, supra.*

"Construing the provisions and schedule of Article XII, Section 2 of the Ohio Constitution together with the express grants of authority contained in Article VI, Sections 1, 2 and 3, we are of the opinion that the provisions of Section 4736, General Code, are still valid, and that a remonstrance is the sole method of protest given the taxpayer. If a majority does not remonstrate against the consolidation, then levies in the several districts consolidated, which were inside the limitations, remain inside, and those levies which were outside the limitations remain outside."

We think it is significant that there is no mention in the syllabus of that case of the bond issue falling within an exemption contained in the schedule attached to the constitutional amendment.

We are of the opinion that the county board has complied with the relevant law in all substantial respects and has not been guilty of an abuse of discretion. We must conclude in the absence of evidence to the contrary that it will proceed henceforth to act in accordance with law and in the exercise of a sound discretion in relation to the subject matter.

For these reasons, the court finds on the issues in favor of the defendants. A judgment entry may be presented in their favor.

*Judgment for defendants.*

Ross and HILDEBRANT, JJ., concur.