Stilwell, Jr., et al., Appellees, *v.* Board of Education of
Hamilton County et al., Appellants.

(No. 7962—Decided January 24, 1955.)

*Messrs. Waite, Schindel & Bayless, Mr. Philip J. Schneider,*
and *Mr. David P. Tarbell,* for appellees W. E. Stilwell, Jr., et
al., and Evendale School District.

*Messrs. Martin, McLain & Rack,* for appellee Sharonville School District.

*Mr. William H. Nieman,* for appellee Woodlawn School District.

*Messrs. Paxton & Seasongood* and *Mr. Reuven J. Katz,* for appellant County Board of Education.

*Mr. Robert M. Galbraith,* for appellant Glendale School District.

MATTHEWS, P. J.   This case is before the court for decision after a trial *de novo* upon an appeal on questions of law and fact.

The plaintiffs seek to enjoin the defendant Board of Education of Hamilton County, its members, and its clerk and county superintendent of schools from taking any action to carry into effect a certain resolution adopted by the board on October 29, 1953, abolishing and dissolving the Crescentville, Evendale, Glendale, Runyan, Sharonville, Springdale, Stewart, and Woodlawn Local School Districts, and providing that the territory embraced within those districts be, and the same was, transferred to a new district thereby created.   This action was filed on the second day following the adoption of the resolution. A copy of the resolution was attached to and made a part of the petition.

It was alleged that the resolution was void because it did not include the appointment of a board of education for the new district.   It was alleged also that tax levies and bond issues were pending to be voted on at the election on November 3, 1953, which were vital to the proper conduct of the schools in certain districts.   It was alleged also that the meeting at which the resolution was adopted was held in violation of a promise made by the defendants to the local boards that nothing would be done until they had discussed a certain report made by the Cincinnati Bureau of Governmental Research recommending the consolidation, with the director of the bureau.   It was alleged also that the consolidation would require levies of taxes beyond the constitutional power of the taxing districts and also that the statute (Section 3311.26, Revised Code) under which the defendants purported to act was unconstitutional and void.

The petition concluded with the averment that by reason of the foregoing allegations the action of the defendants was unlawful, arbitrary, unjust, unreasonable, and void.

On October 31, 1953, a temporary restraining order was granted, enjoining the defendants from taking any action whatever under said resolution other than the filing of the map of the new district with the county auditor. Later, this restraining order was modified so as to permit the defendants to serve notice on the local boards of the passing of the resolution and to publish notice of the passing of the resolution, as required by Section 3311.27, Revised Code. As modified, the injunction remains in full force and effect.

Issue was taken by answer as to all the allegations of the petition, charging unlawful, arbitrary, or unreasonable acts, or that they acted otherwise than in the exercise of a sound discretion.

Later, that is on April 28, 1954, the plaintiffs were permitted to file a supplemental petition, in which they alleged that after the filing of the petition herein a majority of the qualified electors in the territory included in the proposed new district voting at the last general election held on November 3, 1953, filed with the county board of education written remonstrances against the action proposed by the defendants' resolution of October 29, 1953, but that the defendants as the result of mistake of law and fact rejected these remonstrances. The plaintiffs alleged that the defendants misconstrued and misapplied Section 3311.26, Revised Code, to limit remonstrators to those residents of the territory who had voted at the general election held on November 4, 1952, whereas, the general election held on November 3, 1953, was in law and in fact the last general election, voting at which was the essential qualification for remonstrators. It was alleged that a majority of those electors had remonstrated.

It was alleged also that the clerk of the board of elections notified the defendant board that as well as could be determined 4,468 persons voted in the territory at the general election of 1952, and that the individual remonstrators found by the defendant were 2,546, which exceeded a majority of those voting at the election of 1952.

It was alleged also in this supplemental petition that the county board never requested or received from the board of elections a certified list of the names of the persons voting at the election of 1952 in such districts and had never received any information concerning the 1953 election, nor did the clerk of the board of elections inform the defendant board of the voters at the election of 1952 who had since died or moved from the district; and that in rejecting the remonstrances on December 29, 1953, the county board acted without any knowledge relating to deaths, marriages, or removals.

It was alleged also that the county board rejected the names of 300 signers because their names were not found by it on the registration list, although many of that number were registered and had voted at the general election of 1952, and that the board rejected the names of 125 because of improper signatures or no address, whereas, many of these were qualified and had remonstrated, and that the board should have obtained the correct identity of these remonstrators.

The plaintiffs alleged also that the defendant county board rejected their proffer of help at the meeting of December 29, 1953, in determining the qualifications of the remonstrators.

Finally, the plaintiffs alleged that the published notice of the passing of the resolution of October 29, 1953, was defective and misleading in that the resolution was not published in full and was published on November 6 and 13, 1953, and thus after the election of 1953, but that such notice failed to inform the public that the ''last general election'' referred to therein was the general election of 1952, and that only voters thereat were qualified to remonstrate.

By answer to this supplemental petition, the defendants admitted that certain remonstrances were filed with the county board of education on November 28, 1953, and that on December 29, 1953, that board decided that there were not sufficient remonstrances to avoid the consolidation, and that the original action of consolidation should be sustained. They alleged that there were 2,835 signatures to the remonstrances, but that the board found 289 to be duplicates, 147 were not filed in time and at the proper place, 142 were nullified by ''counter-remonstrances'' and that 788 were in the form of post cards, solicited

by, addressed and mailed to the plaintiff Stilwell, and that post cards were illegal and ineffective as remonstrances and were rejected for that reason.

The defendants admitted that they believed and continue to believe the voting at the election of 1952 determined the qualification of remonstrators and that they refused and still refuse to consider the election of 1953 to be the last general election applicable to this situation referred to in Section 3311.26, Revised Code.

The defendants admitted also that they applied to the board of elections for information as to the number of qualified electors residing in the territory herein involved who voted at the general election of 1952 and that the clerk of the board certified that as nearly as could be determined the total was 4,468. They admitted they never requested or received a certified list of the names of the persons voting but that shortly after the remonstrances were filed they took them to the board of elections and requested that board to check them to ascertain which ones had voted at the election of 1952; that the board of elections complied therewith before the county board of education meeting of December 29, 1953; and that acting on that information the board of education found insufficient remonstrances to avoid the consolidation.

The defendants admitted also that they published notice of the passing of the resolution of October 29, 1953, as required by law and as permitted by the amended temporary restraining order, by which they could publish notice "as provided in Revised Code 3311.27"; and that the published notice contained the substance of that resolution, but that the plaintiffs quoted only a part of it in their supplemental petition and omitted that part of the notice that referred to Section 3311.26, Revised Code.

The answer denied all other allegations.

After the opening statements at the trial in this court, the plaintiffs proceeded to offer their evidence, whereupon it immediately developed that the scope and relevancy of the evidence depended upon a determination of whether the general election of 1952 or 1953 controlled in passing upon the eligibility of a remonstrant. Argument on this question had been in-

corporated in the opening statement and on preliminary hearings relating to the setting of the case for trial. Upon the question being presented at the trial, the court considered the question and announced its decision that the general election of 1952 was the "last general election" within the meaning of that phrase as used in Section 3311.26, Revised Code, as applied to the facts of this case—and the trial proceeded in conformity to that ruling. It is now urged that the ruling was erroneous. The pertinent language of that section is:

"A county board of education may create a new local school district from one or more local school districts or parts thereof, and in so doing shall make an equitable division of the funds and indebtedness between the newly created district and any districts from which any portion of such newly created district is taken. Such action of the board shall not take effect if a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election shall, within thirty days from the time such action is taken, file with the board a written remonstrance against such action."

It seems to us that there is not a trace of uncertainty or ambiguity in the meaning of this section. The subject matter was the action of the county board of education authorized by Section 3311.26, Revised Code. The resolution evidencing the action expressly dissolved the eight local districts and expressly created the new district embracing the same territory. We know of no other action by the board that is made a condition precedent to creation of the school district.

At the time this resolution was adopted, there had been no general election in 1953. At the time this action was begun, there had been no such election. We are unable to conceive how a future election can be brought within the meaning of the phrase "last general election."

It is urged, however, that as it is provided in the section (3311.26) that if a majority of the qualified electors residing in the territory voting at the last general election remonstrate within 30 days against the action of the board it shall not take effect, we should stand at that position and take a retrospective view, and, thereby, bring the election of 1953 within view as the last general election. To follow this reasoning would disre-

gard realities. The filing of remonstrances has nothing to do with the creation of a school district. Its effect is to prevent its creation.

In Section 3311.26, Revised Code, provision is also made for the appointment by the county board of a board to administer the affairs of the newly created school district to be superseded by an elected board, and in that connection it is provided that "a board of education shall be elected for such newly created district at the next general election held in an odd numbered year occurring more than thirty days after the appointment of the board of education of such newly created district."

It seems to us that this is a recognition by the General Assembly that a general election might take place within the 30 days in which remonstrances could be filed, and, of course, that it could not be the last general election referred to earlier in the section in relation to the qualification of remonstrants.

We adhere to our ruling that voting at the general election held on November 4, 1952, was necessary to qualify as a remonstrator.

It is also urged that the published notice of the action of the county board of education did not comply with the requirements of Section 3311.27, Revised Code, which provides that the adopted resolution of consolidation should be published once each week for two consecutive weeks and completed not later than the third Saturday following the adoption of the resolution. The objection is based on the fact that the publication was not a verbatim reproduction of the resolution. It does, however, contain the substance of the resolution and in the case of *Smith* v. *Board of Education,* 97 Ohio App., 507, we held an identical publication satisfied the requirements of the statute. The reasons we gave there we reaffirm here and hold that there has been a substantial compliance with the statute.

Counsel also urge that this consolidation will result in the imposition of tax burdens upon certain of the districts, contrary to constitutional limitations upon their taxing and bonding capacities. This contention was also made in the case of *Smith* v. *Board of Education, supra.* We concluded in that case that it was untenable. For the reasons there given, we hold it to be untenable here.

Finally, the plaintiffs contend that the defendant county board of education acted unlawfully, unreasonably, and arbitrarily in several respects. Before discussing these various objections to the action of the board in its handling of these remonstrances, we think it would be helpful to consider where the burden of proof rests. In this connection it should be remembered that it was the purpose of these remonstrators to annul an action already taken by a duly constituted governmental agency. It is the relief sought in this action.

In 1 Ohio Jurisprudence (2d), 607, Section 216, it is stated: "In accordance with the general rule applicable to acts of public officers the action of an administrative agency within the limits of the jurisdiction conferred by law is presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment. In the absence of evidence to the contrary, the agency will be presumed to have properly performed its duties and not to have acted illegally, but regularly, and in a lawful manner."

That this rule prevails in most, and perhaps all, jurisdictions is made manifest by the numerous citations supporting the text in 42 American Jurisprudence, 680, Section 240, in which it is said that where the regulations, decisions, or orders of administrative officers are challenged in court the burden of proving them unlawful in any manner rests upon the party complaining. This rule applies to the action of boards of education in Ohio. 36 Ohio Jurisprudence, 192, Section 160.

Counsel for plaintiffs contend the Ohio cases do not support the rule stated in Ohio Jurisprudence and rely upon *In re Petition to Prohibit Sale of Intoxicating Liquors,* 20 C. C. (N. S.), 26, 31 C. D., 218, and *Kerwin* v. *Board of Education,* 67 Ohio Law Abs., 528, 51 Ohio Opinions, 336, 116 N. E. (2d), 610. A cursory examination of these cases is sufficient to develop that they furnish no foundation for the plaintiffs' position.

The first case arose under a local option statute authorizing a majority of the qualified electors in a described district to file a petition with a judge of the Common Pleas Court, and, if, upon a hearing, the judge should find that the petition was sufficient, the sale of intoxicating liquor would be outlawed. After the petition was filed, various objections to the sufficiency

of the petition by persons claiming to be electors in the district were made, including a denial of the qualifications of each signer. The judge, however, found the petition was sufficient, and it was that finding which was under review on a proceeding in error. It will be observed that this is not a case of a judicial review of an order made by an administrative agency. The proceeding originated in the Court of Common Pleas, or rather before a judge of that court. The petition of the electors initiated the proceeding, whereas, the remonstrances in the case at bar were intended to nullify an order already adopted by the county board of education. It is true that it was held that the judge could consider as true the allegation in the petition that the signers were resident electors of the district "in the absence of any evidence tending to show the contrary." That is far from saying that the burden of sustaining an administrative order rests upon the administrative agency.

The second case relied on (*Kerwin* v. *Board of Education, supra*) was a review of a proceeding to consolidate school districts and has many features similar to this case. It is claimed that the court in that case approved and followed the case of *In re Petition to Prohibit Sale of Intoxicating Liquors, supra*. That is a mistake. The court at page 536 said: "However, neither Section 4227-4, General Code, nor the local option law as construed by the Cuyahoga County Circuit Court in *In re Petition to Prohibit Sale, supra,* is sufficiently similar to Section 4831-1, General Code, for the principle of either to here control."

And, as we construe that opinion, the court was of the opinion that the burden of proof was on the remonstrants for, at page 538, it is stated: "If the defendant board rejected any signature because it was not authentic it was bound to say so. Had the board so acted, the plaintiffs would then have had to shoulder the burden of showing that such action constituted an abuse of discretion."

The *Kerwin case* did not turn on any question of burden of proof. What the court did was to analyze the evidence and from that analysis conclude that the undisputed evidence showed a majority had remonstrated. In reaching this conclusion, the court accepted the finding of the board where it sus-

tained the validity of the signatures, and found that the board erred as a matter of law in rejecting a sufficient number to make the majority.

We think the general rule applies to this case and that in order to set aside or nullify the resolution of consolidation, the burden of proof rests on the plaintiffs to show that the action of the county board was unreasonable and arbitrary, or that it, in some substantial way to the prejudice of the remonstrants, failed to follow the law.

We think that in passing on this question of the proper exercise of discretion it is necessary to have in mind this entire proceeding from its inception. The record shows that the problem of these eight local school districts had been under discussion for years. It was generally thought that something had to be done to provide more adequate educational facilities in that territory. The question was what could be done. Consolidation was advocated by some. It was opposed by others. Surveys were made. Finally, the eight local districts joined in the employment of the Cincinnati Bureau of Governmental Research to make an investigation and report its recommendations. In August 1953, it submitted its report to the local districts with its recommendation that consolidation was the best present solution of the problem. A copy was sent to the county board. Several meetings were held both before and after this report, at which the opposing views were presented.

At a meeting after this report was filed, a representative of one or more of the local boards voiced a desire to examine the employee of the Cincinnati Bureau of Governmental Research as to the meaning of the report. A meeting of the county board was called for a certain date, which later was advanced so as to occur before the election of 1953. One of the claims of abuse of discretion is the advancement of this meeting, it being claimed that this prevented the remonstrants from examining the report and questioning the author concerning some of its recitals and conclusions. We find no abuse of discretion in this connection.

The county board did nothing to hamper the remonstrants in this regard. The report was in effect their report. The survey was made for them. Whatever obligation of explanation

was owed was to them and not to the county board. No meeting of the county board could prevent them from seeking additional information from their employee, the Cincinnati Bureau of Governmental Research. Although they have had months in which to do so, no information outside the report has been developed from that source. Furthermore, the report itself relates exclusively to the question of how to provide for the educational requirements in the specified territory—a matter of opinion and policy in the sound discretion of the county board. We find that the remonstrants were given every reasonable opportunity to present their views on that subject.

It is also urged that passing the resolution of consolidation less than a week before the general election was an abuse of discretion, because under Section 3503.26, Revised Code, the board of elections was authorized to and did prohibit the copying of the lists of registered voters for 40 days before and 11 days after the election of 1953.

It is not suggested that any law imposes a moratorium upon action by the county board of education, depriving it of power to adopt a resolution of consolidation for any period prior to or following a general election. Nor can we detect any abuse of discretion based on the time of passing such a resolution.

It seems to us that the necessary information relating to the voters at the general election of 1952 was available at all times. The pollbooks of the 1952 election contained the authentic and conclusive evidence on the subject of who voted at that election, and as a matter of law any voter at that election was registered to vote at the 1953 election. These pollbooks were on file both at the board of elections and in the office of the clerk of courts. The registration cards were at most just a facility. The record shows that the county board of education and the board of elections had recourse to the pollbooks to determine the voters at the 1952 election. All the registration cards purport to show is the list of registered voters. They do not show who voted at a particular election. The remonstrants, of course, knew whether they had voted at the election of 1952.

We hold that it was no abuse of discretion for the county board of education to disregard or ignore the fact that another

general election would intervene during the 30-day period in which remonstrances might be filed.

It is urged that the remonstrants were misled by the terms of the published notice of the passing of the resolution of consolidation. This notice was required by the law to be completed not later than the third Saturday after the action by the county board of education. The county board deemed it proper to and did insert in this notice a statement that transfer of the territory would not take effect if a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election should within 30 days from the time such action had been taken file with the county board of education a written remonstrance against it. Because of the intervention of the general election of 1953 before this notice was published, it is urged that the public was misled into thinking it referred to that election.

It seems to us that no one interested in this question of consolidation could have been misled by this published notice. At the time the resolution was adopted and at the time this action was commenced, the election of 1953 had not been held. The law and the notice referred back to the last general election that had been held before the action of the county board in adopting the resolution of consolidation. This language would naturally be applied to the situation in the consolidation proceedings as required by law. It relates back to the time the action was taken by the county board. The last general election at that time was the one held in 1952.

We are, also, of the opinion that no one was in fact misled by this notice. The subject of what election was controlling was a matter of controversy almost from the beginning. It was a matter of law concerning which lawyers disagreed.

Finally, it is claimed that the county board failed to take into consideration the possibility of deaths of voters since the 1952 election and, also, their removal from the territory, made no investigation of that subject, and, in determining the number of required remonstrants, made no deduction on that account.

The statute makes no provision for such deductions. It provides that the consolidation shall take effect unless a ma-

jority of the voters remonstrate. We hold, therefore, that the county board did not err in disregarding deaths and removals.

We think the evidence is almost conclusive that a majority of the voters did not file remonstrances. While not formally conceding that fact, the plaintiffs, as we understand their position, do not claim the contrary. Certainly, the county board did not abuse its discretion in reaching the conclusion that a majority had not remonstrated.

For these reasons, the court finds for the defendants and the prayers of the plaintiffs' petition and supplemental petition are denied.

*Judgment for defendants.*

Ross and HILDEBRANT, JJ., concur.